**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MARY J. PATERNOSTER,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA, et al.,**

**Defendants.**

**Case No. 2:08-cv-388**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Norah McCann King**

**OPINION AND ORDER**

This matter is before the Court for consideration of the following sets of filings:

(1) Plaintiff's motion for summary judgment (Doc. # 32), Defendant's memorandum in opposition (Doc. # 35), and Plaintiff's reply memorandum (Doc. # 37); and

(2) Defendant's motion for summary judgment (Doc. # 33), Plaintiff's memorandum in opposition (Doc. # 34), and Defendant's reply memorandum (Doc. # 36).

For the reasons that follow, the Court **DENIES** Plaintiff's motion for summary judgment (Doc. # 32) and **GRANTS** Defendant's motion for summary judgment (Doc. # 33).

## I. Background

The parties have stipulated to the following facts:[1]

> 1. On March 1, 1989, Plaintiff, formerly known as Mary J. Streitenberger, and her sister, Susan A. Streitenberger ("Susan"), jointly acquired the residential real property commonly known as 5085 Springfield Court, Westerville, Ohio 43081 ("Property").
>
> 2. In December 1992, Plaintiff married Michael D. Paternoster.

[1] The parties' January 30, 2009 Joint Stipulations include parenthetical designations of exhibits submitted as stipulated exhibits. For ease of reading, the Court has deleted these parentheticals from the stipulated facts without expressly indicating the omissions.

3. On August 15, 1995, Plaintiff acquired Susan’s interest in the Property, thereby becoming the sole owner of the Property.

4. On August 15, 1995, Plaintiff conveyed her interest in the Property to herself and Michael Paternoster by Survivorship Deed, thereby creating a survivorship tenancy between Plaintiff and Michael Paternoster.

5. On November 24, 2003, Michael Paternoster was individually assessed a Trust Fund Recovery Penalty (the “Assessment”) pursuant to 26 U.S.C. § 6672 for tax periods ending March 31, 2002, June 30, 2002, September 30, 2002, December 31, 2002, and March 31, 2003.

6. On January 21, 2004, the Detroit, Michigan office of the Internal Revenue Service (“IRS”) filed a Notice of Federal Tax Lien in the office of the Franklin County Recorder (“Lien”) against Michael Paternoster with respect to the Assessment.

7. On January 26, 2004, Michael Paternoster died.

8. As of January 26, 2004, the amount due to the IRS on the Assessment was $40,661.24.

9. As of January 26, 2004, the Property was encumbered by the Lien, the validity of which Plaintiff disputes, a mortgage in favor of U.S. Health Credit Union, Inc. and a second mortgage in favor of U.S. Health Credit Union, Inc.

10. Defendant did not levy or attempt to levy upon the Property prior to Michael Paternoster’s death.

11. On February 3, 2004, an Affidavit for Transfer to Survivor was filed of record with the Franklin Court, Ohio Recorder’s Office.

12. On June 7, 2004, Michael Paternoster was individually assessed a Trust Fund Recovery Penalty for tax periods ending June 30, 2003, September 30, 2003, and December 31, 2003.

13. On May 14, 2007, via overnight delivery, Plaintiff submitted an Application for Certificate of Nonattachment of Federal Tax Lien (“Application”) with supporting documentation to the IRS, directed to the Technical Service Group Manager, pursuant to 26 U.S.C. § 6325(e), in order to obtain a determination that the Lien encumbering Michael Paternoster’s interest in the Property was extinguished upon his death and accordingly, that the Lien no longer attached to the Property.

14. On July 30, 2007, via certified mail and facsimile, Plaintiff resubmitted the Application to the IRS, Technical Services Group Manager, based upon the failure of the IRS to acknowledge receipt of the Application or issue a response to it.

15. On August 2, 2007, the IRS sent written correspondence to Plaintiff acknowledging receipt of the Application.

16. On September 20, 2007, the IRS issued a response to the Application.

17. In the fall of 2007, Plaintiff entered into a real estate purchase contract with Corey W. Steele ("Purchaser") in order to sell the Property for the amount of $194,900.00.

18. Prior to closing on the Property, Chicago Title Insurance Company ("Chicago Title"), the company responsible for insuring title to the Property for the benefit of Purchaser, contacted the IRS to confirm that the Lien did not attach to the Property.

19. A representative of the IRS orally responded that the Lien remained attached to the Property and that the IRS's interest was a fixed number on the date of death.

20. To facilitate the closing of the Property, Plaintiff, Purchaser, and Chicago Title entered into an escrow agreement to escrow $42,000.00 of the net sale proceeds ("Escrowed Proceeds").

21. On November 9, 2007, the sale of the Property to Purchaser closed and the Escrowed Proceeds were deposited with Chicago Title pursuant to the terms of the Escrow Agreement.

22. Upon the agreement of the parties, Chicago Title subsequently deposited the Escrowed Proceeds with the Court.

23. Subsequent to the closing, Plaintiff's Counsel continued to attempt to resolve the Lien dispute with the IRS Technical Service Group and the Office of Chief Counsel.

24. The IRS Technical Service Group and the Office of Chief Counsel rejected Plaintiff's Application and request for a Certificate of Nonattachment of the Lien.

25. Plaintiff has not submitted a claim for money damages to the Internal Revenue Service for injury or loss of property or wrongful act or omission of any

employee of the Government while acting within the scope of his office or employment.

26. Plaintiff has not submitted a claim to the Internal Revenue Service for any actual, direct economic damages sustained by Plaintiff which, but for the actions of the Internal Revenue Service, would not have been sustained.

27. Plaintiff has not submitted a claim to the Internal Revenue Service for any actual, direct economic damages sustained by Plaintiff as a proximate result of reckless or intentional or negligent action of an officer or employee of the Internal Revenue Service.

(Doc. # 30, at 1-5.) In addition to recognizing the foregoing stipulated facts, the Court notes that Plaintiff originally filed the instant action on April 7, 2008, in the Court of Common Pleas in Franklin County, Ohio. (Doc. # 3.) Defendant subsequently removed the action to this Court on April 23, 2008. (Doc. # 2.) Plaintiff later filed a five-count amended complaint that asserts the following claims: a count to quiet title pursuant to 28 U.S.C. § 2410(a)(1), a count for the failure to release the lien pursuant to 28 U.S.C. § 7432, an unauthorized collection action count pursuant to 26 U.S.C. § 7433, a slander of title count; and a count for declaratory judgment. After filing the joint stipulations of fact (Doc. # 30) and stipulated exhibits (Doc. # 31), both sides have filed motions for summary judgment (Docs. # 32, 33). Briefing on the motions has ended, and the motions are now ripe for disposition.

## II. Discussion

### A. Standards Involved

The parties both move for summary judgment on various claims set forth in the amended complaint. (Doc. # 23.) Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

Defendant also moves to dismiss select claims pursuant to Federal Rule of Civil Procedure 12(b)(1). That rule provides that an action may be dismissed for lack of subject matter jurisdiction. Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion . . . ." *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990)). *See also Rapier v. Union City Non-Ferrous, Inc*., 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. General Motors Acceptance*

*Corp. of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)) ("The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction"). Moreover, this Court may resolve any factual disputes when adjudicating a defendant's jurisdictional challenge. *See Moir*, 895 F.2d at 269.

**B. Analysis**

Benjamin Franklin once wrote that "in this world nothing can be said to be certain, except death and taxes." *United States v. Estate of Romani*, 523 U.S. 517, 520 n.2 (1998) (quoting Letter of Nov. 13, 1789, to Jean Baptiste Le Roy, in 10 *The Writings of Benjamin Franklin* 69 (A. Smyth ed.1907)). In this case, however, the unfortunate demise of Plaintiff's spouse has introduced a notable degree of uncertainty into the continued vitality of the tax lien recorded against decedent Michael Paternoster. The resulting issue before this Court is deceptively simple in its phrasing: Did Michael Paternoster's death extinguish the lien involved in this case, or did the lien attach to the property and survive his death?

Defendant moves for summary judgment on Counts I and V, the quiet title and declaratory judgment claims, on the grounds that the lien attached to Michael Paternoster's one-half interest in the property involved before his death and that the lien therefore survived his death and the property's subsequent transfer of title to Plaintiff. Plaintiff also moves for summary judgment on these two counts, arguing that under Ohio law, the lien against Michael Paternoster was extinguished upon his death so that Plaintiff is entitled to the escrowed funds.

Resolution of the lien issue turns on two federal statutes and their intersection with state law. The first relevant federal statute, 26 U.S.C. § 6321, provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. The second relevant federal statute, 26 U.S.C. § 6322, provides:

> Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

26 U.S.C. § 6322. Under this statutory scheme, the federal tax lien recorded with the Franklin County Recorder on January 21, 2004, attached to Michael Paternoster's undivided one-half interest in the property before his death on January 26, 2004. Because there is nothing in the record indicating that the assessment has been satisfied or has become unenforceable due to a lapse of time, Defendants argue that the lien remains viable under § 6322.

Some support for this proposition exists in the rationale underlying an arguably similar case, *Brickley v. United States*, No. 1:03 CV 112, 22272298 (N.D. Ohio July 30, 2003). In *Brickley*, a district court addressed a situation in which a husband and wife held property in a survivorship tenancy, with each individual possessing an equal share of the property involved. *Id.* at *2. Federal tax liens attached to the husband's interest in the property pursuant to § 6321. *Id.* Several years later, the husband executed a quitclaim deed transferring his half-interest in the property to his wife. *Id.* at *3. The issue before the district court was whether the liens survived this sequence of events. Recognizing that after execution of the quitclaim deed the wife now "owned the entire legal interest in the property," the district court explained that "this interest remains burdened, in part, by the federal tax liens attached to [the husband's] interest prior to transfer." *Id.* (citing *United States v. Bank of Celina*, 721 F.2d 163, 167 (6th Cir. 1983); *United*

*States v. Bess*, 357 U.S. 51, 57 (1958)). The district court thus declined to cancel the liens as the wife sought.

Similarly, the instant case involves property previously owned by a husband and wife in survivorship tenancy. *See* Ohio Rev. Code § 5302.17. A tax lien attached to the husband's interest in the property, and thereafter circumstances led to the wife owning the entire legal interest in the property. *See* Ohio Rev. Code § 5302.20(B). Whether by a right of survivorship due to the death of a spouse or a spouse executing a quitclaim deed as in *Brickley*, the end result is arguably the same–one spouse possesses the entire interest in the property. Thus, under this rationale, regardless of the vehicle of transfer of the formerly divided interests, a federal tax lien is not extinguished but still retains its vitality. Such an outcome would mean that Plaintiff here, similar to the surviving spouse in *Brickley*, "has failed . . . to demonstrate how and when the federal tax lien[] on the half-interest transferred to her were divested." *Id.*

Plaintiff presents a number of arguments as to why this Court should reach a contrary conclusion. For example, Plaintiff asserts that operation of Ohio Revised Code § 5302.20(C) "[i]n essence . . . subordinates the interest of survivorship transferees to the survivorship rights of the co-joint tenants," which means that because Michael Paternoster's interest was subordinate to Plaintiff's right of survivorship, the interest and therefore the lien were "immediately and automatically extinguished at the time of his death" and "Michael Paternoster's interest in the Property automatically and immediately vested in Plaintiff free and clear of the Lien." (Doc. # 34, at 2, 3.) Plaintiff argues that Defendant could have defeated such destruction of the lien by proceeding under Ohio Revised Code § 5302.20(C)(4), which provides for an action in which "[a] creditor of a survivorship tenant may enforce a lien against the interest of one or more

survivorship tenants . . . ." Ohio Rev. Code § 5302.20(C)(4).

The § 5302.20(C) argument fails to recognize that the state statute cannot provide Defendant with the mechanism for enforcing its federal liens. Rather, as Defendant notes in its briefing, the federal government is permitted to enforce its liens by proceeding under 26 U.S.C. § 7403 or 26 U.S.C. § 6331. (Doc. # 36, at 1-2.) None of the state law cases to which Plaintiff directs this Court explain how the state statute can or does control the mechanism by which Defendant could have proceeded here and none provide a sufficient rationale for deeming the lien involved here extinguished. This Court's own research has failed to divulge such a case. The Court therefore rejects Plaintiff's apparent argument that § 5302.20(C) somehow extinguished the federal lien involved in this litigation.

The United States Supreme Court has explained that "once it has been determined that state law has created property interests sufficient for [a] federal tax lien to attach, state law is 'inoperative to prevent the attachment' of such liens." *United States v. Rodgers*, 461 U.S. 677, 683 (1983) (describing holding of and quoting in part *Bess*, 357 U.S. at 56-57). The extant question in light of this statement is whether Ohio law creates a property interest here for § 6321 purposes. Instructive in this regard is the United States Supreme Court's decision in *United States v. Craft*, 535 U.S. 274 (2002).

In *Craft*, the United States Supreme Court addressed the issue of whether a federal tax lien attached to a taxpayer's interest in entireties property; the delinquent taxpayer had quitclaimed his interest in the real property involved to his wife, who then sold the property. *Id.* at 277. In approaching this factual scenario, the *Craft* majority explained that they must "look initially to state law to determine what rights the taxpayer has in the property the Government

seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id.* at 278 (quoting *Drye v. United States*, 528 U.S. 49. 58 (1999)). The majority went on to clarify the analysis arising from this approach:

> A common idiom describes property as a "bundle of sticks"–a collection of individual rights which, in certain combinations, constitute property. See B. Cardozo, Paradoxes of Legal Science 129 (1928) (reprint 2000); see also *Dickman v. Commissioner*, 465 U.S. 330, 336, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984). State law determines only which sticks are in a person's bundle. Whether those sticks qualify as "property" for purposes of the federal tax lien statute is a question of federal law.

*Id.* at 278-79. The *Craft* majority held that the husband's interests in the entireties property constituted § 6321 "property" or "rights to property" to which the federal tax lien attached. *Id.* at 288.

*Craft* directs today's decision. At first blush, that case may seem distinguishable because it involved the attachment of a lien to a spouse's interest in a tenancy by the entirety. *Id.* at 277. But the interest of Michael Paternoster in the instant case is analogous because "statutory estates by the entireties are recognized in Ohio, although the statute, through amendment, has eliminated the term 'tenancy by the entireties' and instead refers to a 'survivorship tenancy.' " 19 Ohio Jur. 3d (2009) Cotenancy § 5 (citing Ohio Rev. Code § 5302.17). Regardless of the label, the survivorship tenancy the Paternosters enjoyed is therefore Ohio's form of tenancy by the entireties. Looking beyond the labels to reach this conclusion is appropriate because, as the United States Supreme Court has explained,

> [i]n looking to state law, [judges] must be careful to consider the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them. Such state law labels are irrelevant to the federal question of which bundles of rights constitute property that may be attached by a

> federal tax lien.

*Craft*, 535 U.S. at 279. What is therefore important is not the label a state applies but the bundle of rights falling within the label employed.

In *Craft*, the majority explained that "[i]n determining whether respondent's husband possessed 'property' or 'rights to property' within the meaning of 26 U.S.C. § 6321, [the majority] look[ed] to the individual rights created by these state law rules." *Id.* at 282. Reviewing the applicable state law, the majority found that

> respondent's husband had, among other rights, the following rights with respect to the entireties property: the right to use the property, the right to exclude third parties from it, the right to a share of income produced from it, the right of survivorship, the right to become a tenant in common with equal shares upon divorce, the right to sell the property with the respondent's consent and to receive half the proceeds from such a sale, the right to place an encumbrance on the property with the respondent's consent, and the right to block respondent from selling or encumbering the property unilaterally.

*Id.* Identifying as "some of the most essential property rights . . . the right to use the property, to receive income produced by it, and to exclude others from it," the majority noted that "[t]hese rights alone may be sufficient to subject the husband's interest in the entireties property to the federal tax lien." *Id.* at 283.

In the case *sub judice*, Ohio law provides that "[a] survivorship tenancy has the following characteristics or ramifications":

> Unless otherwise provided in the instrument creating the survivorship tenancy, each of the survivorship tenants has an equal right to share in the use, occupancy, and profits, and each of the survivorship tenants is subject to a proportionate share of the costs related to the ownership and use of the real property subject to the survivorship tenancy.

Ohio Rev. Code § 5302.20(C)(1). Thus, Ohio law, like the state law involved in *Craft*, provides within its bundle of rights the rights to "use, exclusion, and income." *Craft*, 535 U.S. at 284.

Ohio law also provides the right to become a tenant in common with equal shares upon divorce, just as the bundle of rights involved in *Craft* provided. *See* Ohio Rev. Code § 5302.20(C)(5); *Craft*, 535 U.S. at 282.

Notably, both the bundle of rights at issue here and the bundle of rights in *Craft* include the right of survivorship. Ohio Rev. Code § 5302.20; *Craft*, 535 U.S. at 282. The *Craft* majority recognized this right as "the right [of the husband] to automatically inherit the whole of the estate should his wife predecease him." *Craft*, 535 U.S. at 285. Given the various other rights involved in that case–rights that the *Craft* majority described as "presently existing"–the majority opined that "[i]t is therefore not necessary to decide whether the right to survivorship alone would qualify as 'property' or 'rights to property' under § 6321." *Id.*

This Court agrees that, as in *Craft*, no opinion need be expressed here on whether Michael Paternoster's survivorship right alone would be sufficient for § 6321 purposes. The remaining rights to use, exclusion, and income, as well as the right to become a tenant in common with equal shares upon divorce, place this case within the scope of the *Craft* rationale. What this means is that, as in *Craft* and not unlike the lien in *Brickley*, the lien here attached prior to Michael Paternoster's death and encumbered the property because the husband's interest constitutes "property" or "rights to property" within the scope of § 6321. Although Plaintiff automatically obtained full vested interest in the property upon her spouse's death, this did not defeat or extinguish the already attached lien that accompanied the automatic transfer. *See Rodgers*, 461 U.S. at 691 n.16 ("Of course, once a lien has attached to an interest in property, the lien cannot be extinguished (assuming proper filing and the like) simply by a transfer or conveyance of the interest.").

Urging a contrary outcome, Plaintiff asserts that the Internal Revenue Service's Notice 2003-60 mandates the conclusions that "a surviving non-liable spouse takes entirety property or property held jointly with the right of survivorship unencumbered by a federal tax lien because the taxpayer's interest in the property is extinguished by operation of law at death." (Doc. # 34, at 4.) That Internal Revenue Service publication provides in relevant part:

> Q4. Does the federal tax lien on entireties property survive the death of the taxpayer? What effect does the death of the non-taxpayer have on the federal lien?
>
> A4. As is the case with joint tenancy with the right of survivorship, if a taxpayer's interest in entireties property is extinguished by operation of law at the death of the taxpayer, then there is no longer an interest of the taxpayer to which the federal lien attaches. When a taxpayer dies, the surviving non-liable spouse takes the property unencumbered by the federal tax lien.

Internal Revenue Bulletin No. 2003-39, Notice 2003-60 (Sept. 29, 2003). Similarly, Plaintiff argues that the Internal Revenue Manual also compels such a result. The manual provides in relevant part:

> In most states, if the individual, against whose property a federal lien attaches, dies before any of the other joint tenants, then the lien ceases to attach to the property. However, if the same individual is the last survivor of the joint tenants, the tax lien then attaches to the entire property. In a few states, however, this is not the rule. Wisconsin is an exception to the general rule: if the federal tax lien has attached to the interest of one joint tenant who then dies, the surviving joint tenant takes the property encumbered with the federal tax lien. *United States v. Librizzi*, 108 F.3d 136 (7th Cir. 1997). Connecticut is also an exception to the general rule. Conn. Gen. Stat. 47-14f.

Internal Revenue Manual § 5.17.2.5.2.2.

Neither publication proves dispositive here. Ohio may indeed be in the apparent minority of states in which the result reached today occurs, but the issue is not whether the result is atypical, but whether it is mandated. Although Ohio does not have a statute that explicitly

provides that a lien survives the death of the taxpayer as the states referenced above do, *see* Wis. Stat. § 700.24; Conn. Gen. Stat. § 47-14f, the bundle of rights set forth in Ohio Rev. Code § 5302.20(C)(1) nonetheless places the deceased taxpayer's interests within the dispositive rationale of *Craft*. What this means is that §§ 6321 and 6322 compel today's result in light of the applicable Ohio law and binding precedent, which means that only Defendant is entitled to summary judgment on Counts I and V.

Plaintiff also argues that as a result of its purported change of positions regarding the lien prior to the sale of the property involved, "Defendant should be estopped from asserting an interest in the Property and/or the Escrowed Proceeds." (Doc. # 37, at 8.) This estoppel argument is based on a September 20, 2007 letter from an Internal Revenue Service advisor to Plaintiff's representative. After noting that the letter was in response to Plaintiff's request for a certificate of non-attachment and after setting forth the timeline of relevant events that Plaintiff had presented in her request, the advisor wrote: "Under Ohio Law, if Real Estate is owned jointly with rights of survivorship, upon death, that property becomes the property of the surviving spouse. Therefore the combination of the documents you have presented: the 8-21-1995 Deed and the Death Certificate are sufficient." (Doc. # 31-15.) Given the events surrounding the sale of the property involved and the contents of this letter, application of the equitable doctrine of estoppel is not appropriate here for at least two reasons.

First, Plaintiff knew of Defendant's purported change of position prior to culminating the sale of the property and cannot therefore be said to have relied on the initial position in effectuating the concluded sale. Reasonable reliance is therefore questionable because no evidence exists before this Court indicating that Plaintiff could not have declined to close on the

sale to Corey W. Steele without penalty or prejudice as a result of Defendant's alleged change in position.

Second, the September 20, 2007 letter is poorly worded so as to invite debate over whether its description of Ohio law actually answers the lien question and whether its describing the "combination of documents" that Plaintiff submitted as "sufficient" was intended to mean that Plaintiff's request for a certificate was well taken as opposed to being a complete application. Plaintiff describes the letter as "stating that the documents and evidence presented were 'sufficient' *to release the Lien under Ohio law*." (Doc. # 32, at 11 (emphasis added).) This self-serving characterization overreaches, and any reliance on the ambiguous letter was not reasonable. Accordingly, there are no grounds for estoppel against the government here, and Defendant remains entitled to summary judgment on Count I and V.

In its motion, Defendant also seeks the dismissal of Counts II, III, and IV pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. These claims are moot as a result of the Court's disposition of Counts I and V because the Court has determined that Defendant's lien has not been extinguished. Moreover, Plaintiff has stipulated that she failed has failed to submit a claim to the Internal Revenue Service, which means that her Count IV state law tort claim for slander of title cannot proceed. See 28 U.S.C. §§ 1346(b), 2671-2680. Similarly, because she failed to file administrative claims for the conduct constituting Count II (the failure to release the lien claim) and Count III (the unauthorized collection action claim), Plaintiff's remaining two claims are barred. *See* 26 U.S.C. §§ 7432(d)(1) (providing that a plaintiff cannot obtain a judgment for damages for a failure to release a lien "unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue

Service”); 26 U.S.C. § 7433(d)(1) (providing that a plaintiff cannot obtain a judgment for damages for an unauthorized collection action “unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service”); 26 C.F.R. § 301.7432-1(e) (prohibiting the filing of a civil action in district court for the failure to release a lien prior to the filing of an administrative claim); 26 C.F.R. § 301-7433-1(d) (prohibiting the filing of a civil action in district court for an unauthorized collection action prior to the filing of an administrative claim).

## III. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff’s motion for summary judgment (Doc. # 32) and **GRANTS** Defendant’s motion for summary judgment (Doc. # 33). The Court **ORDERS** that by August 21, 2009, the parties shall either submit an agreed order as to the distribution of the escrowed proceeds deposited with the Clerk or inform the Court that briefing on the issue is necessary if there is a dispute as to the distribution.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE